IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH M. ESTRADA ROBERTS, | No. 2:14-CV-1195-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security. Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 20) and defendant's cross-motion for summary judgment (Doc. 21).

/ / /

/ / /

/ / /

1

## I. PROCEDURAL HISTORY

Plaintiff, who was a child under age 18 at the time, applied for social security benefits on March 21, 2011. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on October 9, 2012, before Administrative Law Judge ("ALJ") Mark C. Ramsey. In a November 20, 2012, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. The claimant had the following severe impairment(s) before attaining age 18 on April 27, 2011: Marfans syndrome with deformity of the ankles on standing, obesity, hyperlipidemia, and borderline intellectual functioning;

2. Before attaining age 18, the claimant did not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has not developed any new impairment or impairments since attaining age 18;

4. Since attaining age 18, the claimant has continued to have a severe impairment or combination of impairments;

5. Since attaining age 18, the claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

6. The claimant has the following residual functional capacity since attaining age 18: the claimant can perform sedentary work; the claimant can lift/carry 20 pounds occasionally and 10 pounds frequently; he can only stand for two hours in an 8-hour workday; he can sit for six hours in an 8-hour workday; he can occasionally climb ramps, stairs, ladders, ropes, or scaffolds; he can occasionally balance or stoop; he can frequently kneel or crouch; he can occasionally crouch or crawl; he is limited to simple, repetitive tasks with limited contact with the public or co-workers; and

7. Since attaining age 18, considering the claimant's age, education, work experience, residual functional capacity, and the Medical-Vocational Guidelines, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

After the Appeals Council declined review on March 24, 2014, this appeal followed.

/ / /

/ / /

## II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## III.  DISCUSSION

In his motion for summary judgment, plaintiff argues that ALJ impermissibly rejected the opinion of Dr. Cormier. The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an

3

individual, than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  See id. at 831.  In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

/ / /

/ / /

As to Dr. Cormier, the ALJ provided the following detailed discussion of the doctor's clinical findings and opinions:

> On appeal of the initial denial of his claim, the claimant as noted above alleged worsening of his condition and that he had attention deficit disorder (ADD), dyslexia, and low comprehension of math (9E). Thus, the Disability Determination Service reviewing procured a psychological consultative examination. On July 28, 2011, consultative psychologist, Sid Cormier, examined the claimant who reported his primary work-limiting problems included difficulty interacting socially, low self-esteem, anger issues, difficulty with memory, and inability to walk or stand for longer than ten minutes, and complications associated with Marfan's syndrome. . . .
>
> Dr. Cormier noted the claimant exhibited an abnormal gait walking with both feet pointing outward. His fine motor performance was mildly hypotonic. He was able to read, comprehend, and respond in writing to the history questionnaire but asked his mother to complete the majority of it. He did not exhibit obvious signs of psychological distress. The claimant reported his mood was typically "good" although his mother indicated he becomes frustrated easily. The claimant then indicated that he participated in anger management classes at school which he found "incredibly beneficial." He sleeps all day and stays up all night. He said he as low energy. He said he loses his balance easily attributing it to his Marfan's. Dr. Cormier had the benefit of review of the Teacher's Questionnaire, and the echocardiagram study.
>
> The claimant reported graduating from high school in 2001 after a long history of special education classes. He struggled to earn good grades but earned a "C" average in his senior year. He completed high school in a continuation high school setting because of his behavioral issues and [he stated] that his anger management class helped him cope. He reported having ten friends which his mother contradicted stating he has none. He said his friends come over. He does not like large groups and is self-conscious in social situations. He likes to play video games, draw, and write. He can care for his own self hygiene, prepare his own meals, and do routine household chores. He has never paid his own bills but said he could do so if taught. He requires assistance shopping in order to make healthy choices. He does not have a driver's license.
>
> On mental status examination, the claimant was alert and oriented. His sensorium was clear and he denied any history of hallucinations or delusions. Dr. Cormier noted his thought processes proceeded in a somewhat slow and lethargic fashion which he opined was consistent with possible psychomotor retardation. His mood appeared good although somewhat lethargic and he presented with a slightly flattened affect. Dr. Cormier indicated the claimant's concentration capacity was borderline as he was able to recall up to 7 digits forward and 5 digits in sequence but only 3 digits backwards His abstract thinking appeared borderline range. His foresight appeared below average as he seemed to have a basic grasp

of anticipating consequences of his own and other peoples' behaviors. His vocabulary was within normal limits. Dr. Cormier opined the claimant's general vocabulary, word usage, reported history, and ability to conceptualize suggests an individual of high borderline intellectual functioning whose verbal abilities are stronger than his nonverbal abilities.

Dr. Cormier administered a battery of psychometric tests including the Wechsler Adult Intelligence Scale IV, the Bender Visual Motor Gestalt Test II, the Trials A and B, and the Wechsler Memory Scale III. On the intelligence test, the claimant achieved a verbal comprehension index of 96, a perceptual reasoning index of 75, a working memory index of 80, a processing speed in index of 79, and a full scale 10 score of 79. This places his current level of overall intellectual functioning within the higher end of the borderline. Furthermore, his verbal comprehension abilities were significantly stronger than the rest of his abilities. On the Bender Visual Motor Gestalt test, the claimant performed within the average and below average ranges on the copy and recall trials of this test, respectively. His performance was not suggestive of any significant improvement in areas of perceptual/motor or recall/reproductive functioning. On the Trials tests, he was able to complete both trials of this test without errors; the amount of time it took was slightly longer than his agemates, suggesting mild impairment in processing speed. This is consistent with the other measures of processing speed given in this evaluation. On the Memory test, the claimant demonstrated average visual memory, on both immediate and delayed tasks. However, his auditory memory ranged from the borderline to average ranges, suggesting possible impairment in remembering spoken information.

Dr. Cormier diagnosed the claimant with learning disorder, not otherwise specified, rule out dysthymic disorder, rule out cognitive disorder, not otherwise specified, and borderline intellectual functioning. He assessed the claimant's Global Assessment of Functioning score as 60. . . .

Functionally, Dr. Cormier opined that psychologically and behaviorally, the ramifications of the claimant's borderline intellectual functioning, impaired nonverbal abilities, impaired auditory memory functioning, and possible dysthymic disorders are likely to seriously impair his ability to perform complex and detailed tasks, but perhaps only mildly to moderately impair his ability to perform simple and repetitive ones. The aforementioned conditions may mildly impair his ability to maintain regular attendance but moderately impair his ability to perform work activities on a consistent basis. He may benefit from special or additional supervision, particularly in training in new tasks. His ability to complete a normal workday or workweek without interruptions resulting from the ramifications of his borderline intellectual functioning, learning disorder, auditory memory impairments, and possible dysthymic disorder overall appeared moderately impaired. Formal memory testing suggested mild to moderate impairment regarding his ability to accept and remember instructions from supervisors. His history and interview behavior suggested mild to moderate impairment regarding his ability to interact with co-workers and the general public, and he admitted to feeling

extremely self-conscious and somewhat paranoid in social situations due to his abnormal height and weight. His history in response to the stress of the evaluation suggested mild impairment regarding his ability to deal with typical stresses that he might encounter [in] any competitive work situation. He demonstrated mild concentration lapses, as well as mild impairment in pace, although no significant impairment in persistence. He neither described nor evidenced any suggestive indications of decomposition [sic] in a work or work-like setting. Cognitively, he may become compromised regarding his ability to adjust to routine changes in a work situation. However, he does not appear to represent a psychological or behavioral safety concern [in] any work setting up [to] this time. He indicated that he is currently capable of performing most activities of daily living but does not yet have a driver's license and does not know how to pay bills. Ostensibly, he did not appear psychologically functional outside of a moderately supportive situation at this time (3F).

The ALJ concluded that Dr. Cormier's findings "are consistent with an ability to perform simple repetitive tasks and that the claimant has some difficulty socially." The ALJ rejected the doctor's opinion regarding plaintiff's functionality outside a "moderately supportive situation." The ALJ concluded:

> . . .Dr. Cormier's opinion that the claimant cannot function outside of a moderately supportive situation is not supported by these findings. He takes college level courses with some assistance with his education plan and some accommodation for his size. He said he was provided more comfortable seating and some tutoring help. The claimant demonstrates a greater level of independent functioning than opined by Dr. Cormier. Thus, the undersigned assigns limited weight to his opinion but great weight to his clinical observations and examination results. . . .

Plaintiff argues that the ALJ failed to provide sufficient reasons to reject Dr. Cormier's opinion that plaintiff "cannot function outside of a moderately supportive situation." According to plaintiff:

> . . .The ALJ states that Mr. Roberts demonstrates a greater level of independent functioning than opined by Dr. Cormier. (A.R. 29). In support of this claim, the ALJ relies on the fact that Mr. Roberts is enrolled in college level courses and receives assistance with "some tutoring" and "some assistance" with his education plan as well as comfortable seating due to his size. *Id.*

///

///

Plaintiff contends that the ALJ misstated the evidence in concluding that plaintiff's enrollment in college classes demonstrates independent functioning.  Plaintiff argues that the ALJ's analysis is "void of any details as to the extent of the assistance Mr. Roberts receives."  Plaintiff asserts that the ALJ's conclusion "that the unspecified degree of assistance is inconsistent with Dr. Cormier's opinion regarding a moderately supportive situation is nothing more than an unsupported conclusion and not supportive of rejection."  Plaintiff adds:

> Furthermore, the fact that Mr. Roberts requires tutoring and assistance with education planning for three college level classes at Shasta College and is enrolled in the Disabled Students Program arguably provides the best evidence confirming Dr. Cormier's opinion that Mr. Roberts requires a moderately supportive environment, not the other way around.  Mr. Roberts cannot take classes without accommodation. . . .

Plaintiff also argues that the ALJ improperly ignored Dr. Cormier's opinion that plaintiff is moderately impaired in his ability to perform work activities on a consistent basis and complete a normal workday or workweek without interruptions, and that plaintiff "may benefit from special or additional supervision, particularly in the training of new tasks."  According to plaintiff: "The ALJ does not offer any reason for rejecting the aforementioned limitations at [sic] that is error."

As to the ALJ's analysis of Dr. Cormier's opinion that plaintiff cannot function outside a "moderately supportive situation," defendant argues:

> At the 2012 hearing, Plaintiff testified that at the time of the hearing he was taking three courses at college, including math, figure drawing, and ceramics (AR 59).  He had previously taken two semesters of art courses (AR 59, 63, 68).  Plaintiff indicated that he was not taking more courses because he found it physically demanding to walk around the campus, not because he found it intellectually challenging (AR 51, 70, 233).  Plaintiff stated that he was eligible for assistance at Shasta (AR 70).
> The crux of Plaintiff's argument revolves around this assistance at Shasta.  Plaintiff contends in his brief that this evidences a "moderately supportive" environment.  However, he provided no such testimony at the hearing, and provided no such evince elsewhere in support of his claim.  Plaintiff testified that he could get accommodations for seating if it was uncomfortable, get tutors, or help with his education plan (AR 70).  Plaintiff did not testify that he found college intellectually challenging, or that he was unable to attend classes without intellectual accommodation or

assistance (AR 51, 59, 63, 68, 70). . . . While it appears that Plaintiff was eligible for assistance, the evidence of record supports the ALJ's finding that Plaintiff's successful completion of three semesters of college evinced his ability to intellectually function independently. . . .

At the outset, the court observes that Dr. Cormier's statement that plaintiff cannot "psychologically function outside of a moderately supportive situation" represents a generalized summary of the doctor's specific opinions and is not itself a specific opinion. This observation is indicated by the doctor's use of the word "ostensibly" preceding this statement, which concludes the doctor's assessment.

In any event, defendant's argument is persuasive. Contrary to plaintiff's contention that "the fact that Mr. Roberts requires tutoring and assistance with education planning for three college level classes at Shasta College and is enrolled in the Disabled Students Program arguably provides the best evidence confirming Dr. Cormier's opinion that Mr. Roberts requires a moderately supportive environment," plaintiff provided no evidence that he actually required tutoring or other academic assistance with the classes he was taking at Shasta College. While there is evidence that academic assistance was available to plaintiff, there is no evidence he required it or sought it.[1]

Plaintiff also argues that the ALJ improperly rejected Dr. Cormier's statement that plaintiff is moderately impaired in his ability to perform work activities on a consistent basis. Plaintiff further argues that the ALJ improperly rejected Dr. Cormier's statement that plaintiff may benefit from special or additional supervision. In his report, Dr. Cormier stated that plaintiff's conditions "*may* . . . moderately impair his ability to perform work activities on a consistent basis." (emphasis added). Dr. Cormier also stated: "He *may* benefit from special or additional supervision, particularly in the training of new tasks." (emphasis added). As to these

---

[1] Evidence that plaintiff actually received physical accommodations is irrelevant to review of the ALJ's analysis of Dr. Cormier's opinions regarding plaintiff's mental functional capabilities.

9

limitations, the doctor expressed nothing more than a possibility, as indicated by the use of the word "may."  The ALJ did not err in disregarding these statements.

Finally, plaintiff argues that the ALJ improperly rejected Dr. Cormier's opinion as to plaintiff's ability to complete a normal workday or workweek without interruptions.  In this regard, Dr. Cormier opined that plaintiff's "ability to complete a normal workday or workweek without interruptions. . . appeared moderately impaired."  The court does not agree with plaintiff that the ALJ "does not offer any reason" for rejecting this limitation.  To the contrary, the ALJ stated that Dr. Cormier's opined limitations – but not his objective clinical findings – were inconsistent with plaintiff's demonstrated level of intellectual functioning.  As defendant notes: "Once again, Plaintiff's success at college for three semesters is powerful evidence demonstrating that he was able to complete assigned tasks on a consistent basis, and undermined Dr. Cormier's opinion."  As defendant also notes, the reviewing doctors' assessments – to which the ALJ assigned great weight – provide substantial evidence supporting the ALJ's conclusion.

## IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 20) is denied;
2. Defendant's cross-motion for summary judgment (Doc. 21) is granted; and
3. The Clerk of the Court is directed to enter judgment and close this file.

DATED:  March 11, 2016

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE